# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:07-CV-487-GJM-DCK

| | |
|---|---|
| TERESA A. HILL, | ) |
| Plaintiff, | ) |
| v. | ) MEMORANDUM AND |
| | ) RECOMMENDATION |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on the Plaintiff's "Motion For Summary Judgment" (Document No. 10) and the Defendant's "Motion For Summary Judgment" (Document No. 12). The motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b) and are ripe for review. Having carefully considered the parties' briefs, the administrative record, and applicable authority, the undersigned recommends that the Plaintiff's Motion for Summary Judgment be **DENIED**, that the Defendant's Motion for Summary Judgment be **GRANTED**, and that the Commissioner's decision be **AFFIRMED**, based upon the following proposed findings of fact and conclusions of law:

## I. PROCEDURAL HISTORY

Plaintiff was born January 17, 1958, did not finish the ninth grade, is twice married and currently divorced, has an adult daughter from her first marriage, lives with her extended family, and has past work experience as a housekeeper at a hotel, working at a chicken hatchery, and washing dishes at restaurants. (Tr. 19, 93-103, 112, 125, 535, 607, 611, 635). She indicates that she does not

read well, but can read parts of the Bible and can write short notes.[1] (Tr. 19). Her reported daily activities include light household chores, doing crafts, watching television, vacuuming, folding laundry, grocery shopping, playing Bingo at the VFW, making the bed, dusting the house, smoking several packs of cigarettes daily, and taking care of her personal needs. (Tr. 19, 22, 115, 124, 129, 275, 361, 538, 618).[2] She has a driver's license and drives a car. (Tr. 633). Plaintiff is able to walk without any kind of assistance.

On May 21, 1998, Plaintiff filed applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"), alleging disability due to diabetes, osteoarthritis, and mental impairment. (Tr. 89-91, 579-580). On September 16, 1998, Plaintiff was found "disabled" as of March 1, 1998 (Tr. 16, 43-44, 57, 585-587).[3] Plaintiff returned to work for a period in 2001.

On September 27, 2002, it was determined that Plaintiff's condition had improved and that she was no longer disabled as of September 30, 2002. (Tr. 54-55, 58-60, 586-591). Plaintiff sought reconsideration (Tr. 61-63), which was denied. (Tr. 56, 64-73, 592-594). Plaintiff requested an administrative hearing (Tr. 74), and on February 3, 2006, Administrative Law Judge ("ALJ") Richard H. Harper held a hearing at which Plaintiff (represented by counsel) and a vocational expert both appeared and testified. (Tr. 603-640). On March 2, 2006, the ALJ issued a decision finding that

---

[1] Plaintiff wears glasses, although an eye exam in 2002 indicated her vision was "within normal limits." (Tr. 19, 587).

[2] On August 15, 2005, Plaintiff completed a referral form. Under the line "What I like" Plaintiff wrote "arts and crafts, dancing, and bingo." (Tr. 506).

[3] The ALJ observed that, based on testing showing IQ scores of 68-74-68, Plaintiff's impairment was interpreted in the prior decision as "mild mental retardation." Subsequent testing in 2002 showed significantly higher IQ scores of 81-80-86. (Tr. 18).

Plaintiff was no longer disabled. (Tr. 13-24).

In his decision, the ALJ found that Plaintiff has medically improved as of September 30, 2002, but continued to have the medically determinable impairments of diabetes mellitus, osteoarthritis, and major depressive disorder. The ALJ found that these impairments did not meet or medically equal the criteria of any listed impairments. (Tr. 18-19, Findings 4-7). He determined that Plaintiff retained the residual functional capacity ("RFC") to perform unskilled light work with a sit/stand option, with the ability to change positions at least once an hour with only occasional bending, stooping, squatting, climbing or balancing, and not requiring fine visual acuity (Tr. 19-22, Finding 8). The ALJ concluded that although Plaintiff could not perform her past relevant work, based on her RFC, age, education, and work experience, and the vocational expert's testimony, Plaintiff could still perform a significant number of jobs existing in the national economy, and thus, was not disabled as of September 30, 2002. (Tr. 22-24, Findings 9-14).

On September 28, 2007, the Appeals Council denied Plaintiff's request for further review. (Tr. 6-8, 12). Thus, the ALJ's decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of final decisions of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The Fourth Circuit defines "substantial evidence" as:

> being more than a scintilla and do[ing] more than creat[ing]

> a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986).

The Fourth Circuit has made clear that it is not for the reviewing court to re-weigh the evidence or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (concluding that "it is not within the province of a reviewing court to determine the weight of the evidence"); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) (stating that "this court does not find facts or try the case *de novo* when reviewing disability determinations"); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). As long as the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

### A. Whether the ALJ's RFC findings are supported by substantial evidence

Plaintiff challenges the ALJ's RFC determination in various ways. The ALJ is responsible for deciding Plaintiff's RFC, i.e., "the most [one] can do despite [one's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

### 1. Whether the ALJ properly weighed the opinions of Plaintiff's treating physicians

First, Plaintiff contends that the ALJ did not give sufficient weight to the opinions of two treating physicians, Dr. Muniz and Dr. Harness. However, the ALJ appropriately considered the

evidence of record from these physicians, and reasonably determined, based upon a review of the entire record, that Plaintiff's impairments were not as limiting as alleged. (Tr. 21-28).

An ALJ will give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ may "give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Although Dr. Muniz wrote a short letter in January 2004 (Tr. 573) generally indicating that Plaintiff was "unable to return to work," the determination of disability is reserved to the Commissioner. 20 C.F.R. 404.1527(e)(2); *see, e.g., Craft v. Apfel*, 164 F.3d 624 (1998), 1998 WL 702296, at *7 (4th Cir.). The ALJ is not required to give any special significance to the source of an opinion on issues reserved to the Commissioner. 20 C.F.R. 404.1527(e)(3); SSR No. 96-5p, 1996 SSR LEXIS 2, 61 FR 34471 (1996). Dr. Muniz did not indicate *any* functional restrictions for Plaintiff, and contrary to his letter, repeatedly indicated in his notes that Plaintiff was responding well to treatment (Tr. 552-572). Essentially, the brief opinion in his letter is not supported by his own treatment notes.

As noted by the ALJ, the evidence reflected that Plaintiff obtained pain relief from conservative non-surgical treatment. (Tr. 21). "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Dr. Muniz (and other physicians at the Southern Pain Center) periodically saw Plaintiff for alleged back pain. Treatment notes consistently reflect that Plaintiff reported significant relief after

injections and that medication (Lortab) helped to control any pain (Tr. 350-356, 552-578).[4] Although Plaintiff contends that her pain would resume after several months, Dr. Muniz indicated that Plaintiff functioned fairly well, was stable, and that her pain medication allowed her to be "active." (Tr. 575-577). *See, e.g., Charlton v. Barnhart*, 398 F.Supp.2d 295, 304 (D.Del. 2005) (ALJ's finding that the medical records showed improvement through medication and conservative treatment was supported by substantial evidence).

Dr. Muniz' treatment notes repeatedly indicated that Plaintiff's pain was not as severe as she claimed. For example, he observed in May 2003, that although Plaintiff reported her pain as a ten on a scale of ten, "certainly she does not look in agony or in acute distress." (Tr. 578). In October 2003, he similarly noted that Plaintiff claimed to have pain of "8" on a scale of 10, but did not appear to be in such pain (Tr. 576). The ALJ appropriately reviewed the medical evidence which did not indicate that Plaintiff's alleged pain was disabling. (Tr. 21). "When considered with other information, the routine nature of a course of treatment may indicate that a condition is not as severe as a plaintiff's subjective complaints may otherwise indicate." *Viverette v. Astrue*, 2008 WL 5087419, *2 (E.D.N.C. November 24, 2008). The ALJ appropriately considered the treatment notes of the treating physicians in finding that Plaintiff's "statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." (Tr. 21). *See, e.g., Mann v. Astrue*, 2008 WL 906346, at *16 (S.D.W.Va. March 31, 2008) (holding that the ALJ properly considered the evidence, including the conservative medical treatment, in finding Plaintiff's complaints not fully credible). "It is the province of the [ALJ], and not the courts, to make credibility determinations."

---

[4]Another treating physician, Dr. Siddhi Patel, indicated on 7-11-05 that an injection had "helped her a lot" and that "medications help." (Tr. 557). He indicated "continue current medications since it is allowing the patient to tolerate pain and take care of her activities of daily living." (*Id*.).

*Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir.1994).

With respect to another treating physician, Dr. Harness of Caresouth Carolina, Inc., the ALJ specifically considered Dr. Harness' treatment notes. (Tr. 20-21). Plaintiff went to him periodically from July 2002 through October 2005 for various complaints, including diabetes, low back pain, and depression (Tr. 411-503). The ALJ noted that Plaintiff did not want to take anti-depressants, and that Dr. Harness prescribed Xanax, which Plaintiff reported helped her. (Tr. 20, 411, 498). With respect to her reported complaints of back pain, the ALJ noted that in November 2002, Dr. Harness reported that Plaintiff had only "mild" stiffness when bending completely at the waist. (Tr. 20). The physician noted that Plaintiff had *not* tried acupuncture, nerve blocks, counseling, physical therapy, chiropractic, or massage. (Tr. 360). Treatment notes from July and October of 2004 indicate that Plaintiff's "medications work well to control her pain without side effects." (Tr. 564, 565). As the ALJ observed, Dr. Harness' notations did not indicate any end organ damage, visual problems, or any peripheral neuropathy due to diabetes. (Tr. 21, 411-503). In fact, the majority of his notations were "unremarkable," and his most recent notes showed no significant problems upon physical examination. (Tr. 493-501).[5]

Hence, although Plaintiff selectively refers to isolated notes to challenge the weight assigned

---

[5] Plaintiff also discusses Dr. Harness' Functional Capacity Questionnaire (Tr. 598-602) which Plaintiff provided to the Commissioner six weeks after the administrative hearing. Plaintiff contends the Appeals Council considered it, and thus, it may be considered on review here. The Commissioner points out that Dr. Harness offered no explanation for the restrictions he checked and did not refer to any objective test results in support. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (a treating source opinion is entitled to little weight when it is unsupported by objective tests and relies on the claimant's subjective complaints). Moreover, the evidence of record, including Dr. Harness' own treatment notes and Plaintiff's daily activities, were inconsistent with the level of restrictions he checked. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (finding claimant's daily activities inconsistent with allegations of disability).

to the medical evidence in determining her RFC, it is the Commissioner's duty, based on the entire record, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence"). The ALJ's decision is supported by substantial evidence.

**2. Whether the ALJ considered the psychological assessment of Dr. Wheeler**

In June of 2002, Plaintiff underwent a consultive psychological exam by Dr. David J. Wheeler, Ph.D. Dr. Wheeler noted that Plaintiff appeared severely depressed at that time, but indicated that she was still able to "perform simple routine tasks" and had an "adequate attention span and working memory to maintain her concentration and persistence to a task." (Tr. 277). Dr. Wheeler further indicated that Plaintiff remained able to interact with co-workers and supervisors in a productive manner. (*Id.*). Plaintiff contends that the ALJ did not consider this psychological assessment.

Contrary to Plaintiff's contention, the ALJ's decision *did* specifically refer to the results of Dr. Wheeler's psychological examination, including the IQ test results. (Tr. 18-19). The ALJ also incorporated Dr. Wheeler's opinion of Plaintiff's psychological restrictions and abilities into the hypothetical question to the vocational expert at the administrative hearing and specifically discussed these abilities in his decision. (Tr. 19, 636-637). Similar abilities were found by another psychological consultant, Dr. Manhal Weiland, Ph.D. (Tr. 398). Hence, the ALJ's assessment of Plaintiff's mental impairment is supported by substantial evidence. The ALJ's finding that Plaintiff was able to perform the demands of unskilled work is also supported by substantial evidence. (Tr.

18-22).[6] See 20 C.F.R. §§ 404.1568, 416.968; Social Security Ruling ("SSR") 85-15 ("The basic mental demands of competitive remunerative unskilled work include the abilities ... to understand, carry out and remember simple instructions....").

### 3. Whether the ALJ made his own medical opinion

Plaintiff's next challenge to the ALJ's RFC determination is based on a mischaracterization of the administrative process. Contrary to Plaintiff's contention, the ALJ's RFC finding did not amount to a "medical opinion," but rather, was an administrative determination reserved to the ALJ based on a consideration of "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3); 20 C.F.R. §§ 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as ... your residual functional capacity, the final responsibility for deciding these issues is reserved to the Commissioner"); see also *Craft v. Apfel*, 164 F.3d 624, 1998 WL 702296, at *7 (4th Cir. Oct.6, 1998) (determinations regarding a claimant's RFC and application of vocational factors are reserved to the Commissioner).

The state agency physicians opined that Plaintiff retained the capacity to perform work at a light exertional level with occasional postural limitations (Tr. 374-381); 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p (providing that the opinions of non-examining state agency medical sources, when supported by evidence in the record, should be considered as those of highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims). The notes and objective findings of Plaintiff's treating physicians did not indicate any functional limitations greater than those found by the ALJ. The ALJ considered the entire record

---

[6]Dr. Harness' notes indicate that, even without anti-depressants, Plaintiff's symptoms of anxiety and depression were fairly well-controlled with Xanax. (Tr. 452, 486, 493, 496, 498).

and had the considerable task of resolving any inconsistencies in the evidence.

Based upon all the evidence, including the medical evidence, Plaintiff's testimony, and the opinions of the state agency physicians and consultants, the ALJ reasonably determined that Plaintiff had severe impairments, but retained the ability to perform unskilled light work with a sit/stand option, with the ability to change positions at least once an hour, with only occasional bending, stooping, squatting, climbing or balancing, and not requiring fine visual acuity. (Tr. 19-22, Finding 8). The ALJ's RFC finding was consistent with the objective medical evidence of record, reflected all of the functional limitations identified by the state agency physicians, and took Plaintiff's daily activities into consideration. To the extent that Plaintiff's impairments impacted her ability to work, the ALJ's RFC reasonably accounted for any resulting limitations. The ALJ's decision is supported by substantial evidence.

### 4. Whether the ALJ's hypothetical question to the VE was deficient

Plaintiff briefly contends that the ALJ's hypothetical question to the VE did not accurately state Plaintiff's limitations because the ALJ did not mention the impact that Plaintiff's depression had on her functional capacity. As already discussed, the ALJ considered the various psychological examinations of Plaintiff and the ALJ incorporated Plaintiff's non-exertional restrictions and abilities into the hypothetical question to the vocational expert at the hearing. (Tr. 636-637). The ALJ specifically discussed these abilities in his decision. (Tr. 19-20). Although Plaintiff complains that depression affected her concentration, the ALJ specifically ruled out any work involving "sustained skilled concentration" in his hypothetical question. (Tr. 636-637). Plaintiff's limitation to unskilled work was adequately presented to the VE. Plaintiff has not shown that any pertinent non-exertional restrictions were omitted from the hypothetical question. The ALJ's RFC

determination is supported by substantial evidence.

### 5. Whether the ALJ Properly Relied on the VE Testimony

Plaintiff next disputes whether the ALJ properly relied upon the testimony of the VE. Although Plaintiff brings this argument under the "RFC heading" with her other arguments, the VE's testimony as to jobs available to Plaintiff in the national economy concerns the final step of the analysis. See *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980) (vocational expert testimony may provide "substantial evidence" for purposes of the final step of the requisite disability analysis). Vocational experts "have, through training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs." *Id*.

In the present case, the VE testified that Plaintiff could perform the unskilled jobs of egg cleaner (over 800 jobs in North Carolina, with more available nationally), food assembler (1,200 jobs), or cleaner/polisher (1,800 jobs). (Tr. 637-638). The VE testified that this list of appropriate jobs for a person with Plaintiff's abilities was illustrative, not exhaustive, and that these jobs existed in all regions of the country. (*Id*.).

To the extent Plaintiff argues that the ALJ should be bound by the characterization of these occupations as requiring "L1" minimal literacy in the Dictionary of Occupational Titles, the ALJ and VE are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications. *See Wright v. Massanari*, 321 F.3d 611 (6th Cir. 2003); *Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th

Cir. 1995).[7] Although Plaintiff contends that she is functionally illiterate, the ALJ specifically included this in his hypothetical question. (Tr. 637-638). Moreover, the regulations comprehend that illiteracy has little impact on the ability to perform unskilled work. See 20 C.F.R. § 404, Subpart P, Appendix 2, §§ 201.00(h)(4)(i), 202.00(g). Plaintiff has not shown that the ALJ erred in evaluating the testimony of the vocational expert.

### B. Whether the ALJ properly considered Plaintiff's noncompliance

Although Plaintiff claims to have "uncontrollable diabetes," the ALJ reviewed the medical evidence, including the treatment notes of various treating physicians repeatedly indicating their great frustration that Plaintiff was not taking her medications, including her insulin. (Tr. 414, 421, 424, 427, 431, 436, 441, 445, 448, 452, 460, 468, 471, 477-478, 493-494, 500). Based on the substantial evidence of record, the ALJ found that Plaintiff made little effort to control her diabetes. (Tr. 20). The record is replete with evidence supporting this conclusion. See (Tr. 412 "very noncompliant in the past;" 421 noting that Plaintiff acknowledged she was "not taking her insulin every day;" 452 "she has been very noncompliant with medications;" 478 "she admits that she is not taking her insulin all the time like she is supposed to" and "frequently does not take her insulin;" 576 ("admits cheating," drinking sodas, not watching her diet). As the ALJ noted, Plaintiff even

---

[7]Although the Commissioner bears the burden of showing (at the final step) the existence of jobs that the Plaintiff can perform, Plaintiff did not to bring any alleged conflict between the VE testimony and DOT definition to the ALJ's attention at the hearing. See, e.g., *Haas v. Barnhart*, 91 Fed. Appx. 942, 947-48 (5th Cir. 2004) (emphasizing that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error"); *Justin v. Massanari*, 20 Fed.Appx. 158, 160 (4th Cir. 2001) (interpreting SSR 00-4p to require the ALJ to address only evident discrepancies, not to uncover discrepancies); *Brown v. Barnhart*, 408 F.Supp.2d 28, 34-35 (D.D.C. 2006) ("there is substantial and persuasive authority that under SSR 00-4p, the mere failure to ask such a question cannot by itself require a remand").

showed up at the doctor's office with sweetened drinks, against all medical advice. (Tr. 20). The ALJ reasonably indicated that "if claimant would cease her use of sugar as she has been directed to numerous times and take her insulin as directed, she would be able to control her diabetes." (Tr. 21).

The treatment notes reflect that Plaintiff also showed little interest in any referrals or other treatment options for her various other complaints. (Tr. 456 "tried to refer Plaintiff but she was not interested"). Dr. Harness advised Plaintiff several times to see an endocrinologist, but she indicated that she was not interested (Tr. 427, 431, 445, 448, 452, 46, 478). He noted that "she has been very noncompliant with medications." (Tr. 452). Plaintiff was referred to an orthopedic surgeon, but decided not to go. (Tr. 411, 421). As the ALJ noted, Plaintiff also did not persist with available mental health treatment and opted not to take anti-depressants. (Tr. 20, 411). The ALJ observed that, considering the record as a whole, Plaintiff "only seeks professional help when it appears that it will help her in her quest for disability payments." (Tr. 21).

To the extent Plaintiff seeks to blame her noncompliance on recurring depression, Dr. Harness' notes indicate that Plaintiff's symptoms of anxiety and depression were fairly well-controlled with Xanax. (Tr. 452, 486, 493, 496, 498). To the extent Plaintiff alleges that she was non-compliant because she could not afford medical care, the record refutes this. The record shows that she had access to treatment while on Medicare and that when this ended, she was counseled regarding free resources and was "directed to seek medical treatment through local Health Department, Red Cross, and/or Crisis Ministries." (Tr. 532, 535). She was referred to a case manager, and various appointments were made for her at the health department, including appointments to obtain insulin. (Tr. 535, 538). While a claimant's failure to obtain unaffordable medical treatment should not be held against her, *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir.

1986), a claimant's failure to obtain treatment can be considered for purposes of determining credibility where substantial evidence supports the conclusion that the claimant had access to treatment. See *Mickles v. Shalala*, 29 F.3d 918, 929-930 (4th Cir. 1994). The ALJ's decision is supported by substantial evidence.

## IV. RECOMMENDATION

**IT IS RECOMMENDED** that "Plaintiff's Motion For Summary Judgment" (Document No. 10) should be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 12) should be **GRANTED**; and the Commissioner's decision should be **AFFIRMED**.

## V. Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact and conclusions law and the recommendations contained herein must be filed within fourteen (14) days after service of same. Fed.R.Civ.P. 72 (amended, effective December 1, 2009). Responses to objections must be filed within fourteen (14) days after service of the objections. Failure to file objections to this Memorandum and Recommendation with the District Court will preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

Signed: December 8, 2009

David C. Keesler
United States Magistrate Judge